DowNev. Judge,
delivered the opinion of the court:
The plaintiff seeks to recover the difference between the market value of 1,000 tons of coal delivered to the defendant and the amount it was paid therefor under a contract under which the defendant then contended and nowr contends that it was required to furnish it.
Seeking contracts for coal for the fiscal year 1917, the Navy Department issued a “ schedule ” containing general specifications, notes, etc,, and ten printed forms of proposals bearing different “ class ” numbers, each applicable to a different port or station and each containing therein in print the estimated amount needed at the named port or station. Among them was a form of proposal, “ class 18,” for the furnishing *418 of 600,000 tons of steaming coal for delivery at Hampton Roads.
Note (a) of tbe general provisions in the schedule, applicable generally to all classes, provided that—
“ Bids on less than the entire amount of coal specified under each class will be received and considered. Such partial bids must state the amount of tonnage it is proposed to furnish subject to the other conditions of these specifications.”
The plaintiff bid to furnish 10,000 tons at $2.85 per ton, the bid being submitted on the prescribed form by inserting “ 10,000 ” in lieu of the “ 600,000 ” printed therein. It was notified of the acceptance of its bid for 10,000 tons, and a contract was entered into made up physically of the bid and portions of the specifications, conditions, and notes clipped from the “ schedule ” and pasted on and thus made a part of the contract.
The plaintiff’s contention is that under the clause (a) above quoted it elected to and did submit its bids to furnish 10,000 tons of the estimated required amount of coal; that its bid was accepted for 10,000 tons; and that under its contract it had discharged its contract obligation when it had furnished that amount and could not be required to furnish more. The defendant maintains that by reason of certain provisions in the contract it had the right to require of the plaintiff under its contract the 1,000 tons in question. A construction of the contract in this x*espect is therefore necessary.
It is unfortunate that in matters of such moment the-United States must resort to such a patchwork method of constructing a contract rather than to simple and plain English so used as to express clearly the mutual rights and obligations of the parties to the avoidance of such controversies.
It seems to us quite pertinent as bearing upon the proper determination -of plaintiff’s obligation under the contract in question to consider the situation as it would have been had one party, the plaintiff or anyone else, bid to furnish the entire 600,000 tons stated in the submitted form of proposal and, upon acceptance of its bid, entered into a contract in the form now under consideration. What would have been the limits of the contractor’s rights and obligations? Would *419 tlie contract of necessity be construed as for the specific amount named or might there be a variance dependent on the needs of the naval service at that port?
In such circumstances note (a) would have had no office to perform, but other conditions stated in the schedule and incorporated in the contract, as they are in this instance, would be vital.
It sufficiently appears that the contracts sought are annual contracts for supplying the estimated needs of the Navy at certain named ports and stations during the ensuing fiscal year. Such needs, it will be conceded, could not be accurately stated in advance. Past experience, any known change in conditions being considered, furnished the best index. The general conditions incorporated in the schedule under the head “ Quantities estimated ” and incorporated also in the contract, contained these provisions:
“ It shall be distinctly understood and agreed that it is the intention of the contract that the contractor shall furnish and deliver any quantity of the coal specified which may be needed for the naval service at the places named during the period from July 1, 1916, to June 30, 1917, irrespective of the estimated quantities stated, the Government not being obligated to order any specific quantity.
“ The estimated quantities have been arrived at from the records of previous purchases. While they represent the best information obtainable as to the quantities which will be required during the period covered by the contract, they are estimated only and are not to be considered as having any bearing upon the quantity which the Government may order under the contract.”
The first paragraph of the quotation may be passed as immaterial here since it is designed simply to relieve the Navy Department from obligations to take any part of the estimated quantity which it may not need. The second paragraph informs bidders that the quantities stated áre estimated only and states the basis of the estimate which it is said furnishes the best information obtainable “ as to quantities which will be required during the period covered by the contract.” “ Required,” .beyond question, by the Navy Department at, in each instance, the port or station named. And following is the very specific provision that they, the *420 estimated quantities, “ are not to be considered as having any beáring upon the quantity which the Government may-order under the contract.” . •
Incorporated in an annual contract entered into by.a bidder who proposed to furnish the entire estimated quantity of 600,000 tons, can there be any doubt that these provisions would relieve the Government from ordering more than 500,000 tons if perchance no more was needed or would permit it to order and require the contractor to furnish .700,000 tons if needed by the Navy Department at this port? If one contract had thus been made for the entire estimated quantity, it is not at all likely that such a question, as is'here presented would ever have arisen. Contracts indefinite in quantity but measured by a need are enforceable . to the extent of the need. Brawley v. United States, 96 U.S. 168.
The contention of the plaintiff is predicated on note (a) quoted above and the fact that thereunder it bid to. furnish 10,000 tons. The effect of that clause is for consideration, not standing alone, but in the light of the other provisions just discussed and other pertinent facts. And the discussion of the effect of the other provisions upon this one is abbreviated, in fact practically rendered needless, by the concluding words of the note which attach to the required statement as to the amount it is proposed to furnish, the further condition that it be a statement of the amount it is proposed to' furnish, subject to the other conditions of these specif cations'. (Italics ours.)
We are not permitted to disregard this language. ' There is nothing in it of repugnancy or inconsistency. And given its plain meaning it must require that the conditions ■ discussed as applicable to an assumed contract for the- entire estimated needs apply to a contract such as this for an apportioned part thereof.
It is readily to be urged that such a construction imposes a burden in excess of that intended to be assumed and perhaps beyond the possibility of performance. That, tinder such a construction, one proposing to supply a minor part of an estimated need might be required to. supply the entire need. We need not discuss an assumed case of extreme possibilities. We are limited in our needs for present purposes to *421 a construction of this contract in the light of all its provisions to the extent of determining whether it imposed on the plaintiff the obligation asserted by the defendant.
The estimated quantity of coal needed was large. It was evidently conterixplated, as found to be the case, that bidders hot able to furnish the entire quantity might desire to furnish a part thereof. And it was no doubt contemplated that from all the bids received the Government would award such acceptances as in the aggregate would be commensurate with its estimated needs. Would it be reasonable to assume that the Government, specifically declaring with reference to one proposal for the entire amount that it could only estimate its needs and that its estimate should not be considered as having any bearing on the quantity which might be ordered, would attempt when it allotted its needs to a dozen bidders to contract severally and hence in the aggregate for a specific amount? !
It was provided in the general conditions of the schedule incorporated in the contract that such distribution of- tonnage among “ the different bidders for suitable and acceptable coals for the naval service ” might be made as should be considered for the best interests of the Government, and when the distribution was made it was evidently the intention to apportion the obligation of supplying the needs rather’ than to apportion a specific quantity.
If the conclusion was right that under a single assumed contract for the entire estimated amount, with the attendant' conditions attached, the Government might have ordered but 500,000 tons, or, on the other hand, might have required the furnishing of 700,000 tons if it needed that amount, the conclusion must follow that under an apportionment plan the plaintiff must assume its proportionate part of the entire obligation and be subject pro .rata to the same requirement. This is all that was required of it and for present purposes Ave are not concerned Avith any question as to the result had the attempt been made to impose on it the burden of some other contractor. The correspondence clearly indicates an intention to equitably distribute the burden as to the needs in excess of the estimated quantities and shoAvs that the *422 requirement of the plaintiff was in direct proportion to the total excess needs over the estimated quantity.
We. are therefore of the opinion that no more was required of the plaintiff than might rightfully be required under its contract and the .case might be permitted to rest upon that proposition, but, if we should assume for the sake of the argument that this conclusion is not tenable, there is yet another ground upon which it must be held that the plaintiff can not recover.
!■ It maintains and the record shows that it furnished this additional 1,000 tons of coal under protest and that it specifically reserved the right to take proper steps for the recovery of the difference between the market and the contract price x>f the coal. Assuming that it was not obligated under the contract to furnish this additional amount, can a mere protest give it.' any rights of recovery in the face of the fact that it did furnish in response to a specific demand that it should furnish it under the contract? There was never at any time any other attitude on the part of the representative of the Government' than that the plaintiff was obligated under its contract to furnish the coal in question. At all times the demand was that it be furnished under the contract and the plaintiff so understood the demand. There was nothing in the whole transaction from which could, be inferred any intention on the part of the officer in charge for the defendant to purchase or pay for this coal otherwise than under the contract. The minds of the parties never met upon any proposition in that respect and, immaterial though it may be, the officer in charge never even gave recognition to the plaintiff’s attempt to reserve a right to seek recovery of additional compensation.
What, then, must be the conclusion? The defendant demanded the coal under the contract and the plaintiff furnished the coal. If the plaintiff under such circumstances has any rights of recovery, it must be because its protest against a demand with which it need not comply gave it that right. We do not think a protest in such circumstances can servé any such purpose. The plaintiff’s right was to refuse to deliver the coal in response to the demand made.
*423 It is fully realized that the invoking of such a doctrine must in some cases work a hardship, for in troublous times patriotic citizens are loth to refuse the demands of their Government even though they may seem to them to be unwarranted, but it is our province only to announce the law of the case as we believe it to be.
Upon either or both of the grounds stated we must conclude that the plaintiff is not entitled to recover.
Grahaji, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.