Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff was an importer of goods known as Venetians, and in the summer of 1917 had contracted for the purchase of a quantity of these goods from a manufacturer at Bradford, England, and they were held there for plaintiff in their undyed condition. On the 25th day of June, 1918, an officer in the Clothing and Equipage Division of the Quartermaster’s Department, acting under proper orders, addressed a communication to a number of importers and dealers “in Venetians and twills,” including plaintiff, which stated that Army emergency required the taking over of “ all contracts between domestic importers and English manufacturers covering Venetians and twills of a suitable construction” for Army purposes; that there was required the importers’ purchase memorandum covering the goods due for delivery up to October, these to be accompanied by samples representing qualities referred to in the contracts; that all goods were to be held in England until action was taken by the department mentioned; and that such goods as were selected- would be taken on a basis of net cost, shown by the contract, plus 10 per cent.
The plaintiff replied on July 3rd to this notice by submitting a number of samples of Venetians, and stated that, among others, he had the balance of a contract for 32-inch Venetians, purchased June 6, 1917, at 19-| pence, which were being held in the grey. On July 15th the same officer wrote plaintiff that “ Army emergency required ” the taking over of the Venetians that he had reported on hand in Bradford in the grey, and to be dyed by him, and further that plaintiff was to inform the department of the actual cost price of these goods, and that an order would be sent him covering them, with an allowance of 6 per cent to cover the “ casing and putting up charges ” and 10 per cent profit. The plaintiff called upon the procurement agent and objected to the price, urging among other things that the maintenance by him of an office in England entailed additional expense. It was agreed between these parties that 2 per cent additional would be allowed because of the expense of the office maintained by plaintiff in England. *103 This brought the price to 19.T625 pence. Plaintiff protested against the allowance of only 10 per cent profit. On August 6, 1918, plaintiff received an order to deliver the 32-inch Venetians at the unit price of $0.4609 per yard “to include the cost, of commercial packing,” delivery to be f. o. b. cars at Bradford, under shipping instructions to be furnished by the depot quartermaster at New York. As to proof of delivery, the order stated that “the contracts shall accompany such invoice made under this order” with a certificate by- the United States purchasing officer located at London that delivery had been made. Later the plaintiff, having first had the goods dyed to conform to tire sample he had exhibited to the Government’s procurement agent, caused deliveries to be made of the goods f. o. b. cars at Bradford in accordance with the order. He was paid therefor at the rate of $0.4609 per yard, this price being the cost of the goods in the grey to plaintiff, as has been stated, and included the cost of dyeing, with 2 per cent added to the price for office expense, 6 per cent added for packing or casing, and 10 per cent for profit. The plaintiff protested against the latter item, and protested that the total amount paid to and received by him was inadequate and was not just compensation. The plaintiff had been informed by the procurement agent that unless he turned over the contracts desired his goods would be “ commandeered.” Manifestly, the agent who was seeking the goods for the Army needs had no right to fix the price at which the importers should deliver their contracts or their goods, but it is also true that the plaintiff could, by a course of dealing with such agent, settle or agree upon the price.
It may be true, as plaintiff apparently claims, that he delivered the goods in England, where they were when the negotiations began, because he thought he had no other recourse, but that claim does not alter the law or the facts that he made deliveries upon procurement order which stated the price, and that before making these deliveries he undertook to dye the goods and negotiated for the cost of casing and an additional allowance because of office expense. He had been informed at the outset of the price which the *104 procurement agent expected to pay, and the circular giving that information was, in effect, a proposal to buy at the stated price. If this sum was not acceptable to plaintiff, the law did not require him to accept it. Finally, the goods were delivered f. o. b. cars in Bradford, England, after having been dyed by plaintiff and packed by his representative under an order which stated the terms. In these circumstances his protest over the percentage of profit allowed him becomes ineffective. Whether the goods, then in England, could have been “commandeered” over plaintiff’s objection we need not decide. He did not protest against delivering them, but he. facilitated their delivery without putting the procurement agent, or those authorized to do it, to the necessity of “ commandeering ” them. His mere protest of the price is not sufficient. Gibbons case, 8 Wall. 269; Willard, Sutherland & Co., 56 C. Cls. 413.
It may be added that if the plaintiff’s right of action were conceded it would yet result that there can be no recovery, because there is no satisfactory proof of the value of the goods. These were in England, and while there is some rather vague testimony as to the value of 32-inch Venetians in New York about the time of the negotiations with plaintiff, that value, if proven, would not be sufficient to show what the value was of the contracts for goods on the other side of the ocean.
We conclude that the petition should be dismissed. And it is so ordered.
Graham, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.