Cambbell, Chief Justice,
delivered the opinion of the court:
The plaintiff sues to recover an alleged price for a large amount of sugar it furnished to the Navy. It claims that there was an agreed price of 23 cents per pound. After delivering the sugar it rendered a bill based on these figures, with an additional charge of 10 cents per bag and another small charge, all aggregating $97,356. The Government was credited with the payment made on the sugar at 14 cents per pound and a “discount” of $1,200. The difference of $37,356 is the principal sum claimed in the petition. The officials representing the Government in the transaction offered to settle for it on the basis of 17% cents per pound. This offer was refused by the plaintiff, and on that phase of the case the question is what price was payable for the sugar.
The Government presents, however, a contention that the Court of Claims is without jurisdiction of the controversy. Insisting that the sugar was “ requisitioned ” under the authority conferred by the tenth section of the act of August 10,1917, 40 Stat. 276, known as the Lever Act, the argument is that plaintiff could only sue in a district court of the United States. Pfitsch case, 256 U. S. 547. The facts do not show a requisition of the sugar, but they do establish the existence of a valid contract. They show that an order-dated April 15,1920, directed to the Federal Sugar Befining Co. at its office in New York, was issued out of the Bureau of Supplies and Accounts of the Navy Department, by which an order was placed with plaintiff for 420,000 pounds of granulated sugar to be delivered by May 1, 1920, to provisions and clothing department, fleet supply base, Thirty- *197 fifth Street and Second Avenue, Brooklyn, N. Y., in certain kinds of sacks. The order mentioned a “ provisional price” of 14 cents per pound. It was drawn upon a form in use in the bureau, which contained the language that in accordance with the provisions of designated acts of Congress “and acting under the direction of the President of the United States * * * an order is hereby placed with you under the conditions stated in subparagraph B (subparagraph A is eliminated and not a part of this agreement), to furnish and deliver material or services needed by the Navy as in one sheet attached.” The attached sheet stated the details, as above given. The subparagraphs A and B refer only to price. As A was eliminated from the “ agreement ” by the order itself, there was left subparagraph B, which states that “ as it is impracticable to now determine just compensation for the material to be delivered or services rendered, the fixing of the price is subject to later determination.” It assures the vendor of just compensation and proceeds “ pending the determination of the final price, you will be paid the provisional price stated hereon.” There are also provisions as to payment of the additional sum or a refund by plaintiff, according as the final price exceeds or falls below the provisional price.
This order was duly accepted by the plaintiff and the original was returned to the bureau. The acceptance reads: “The above order is accepted subject to the conditions in subparagraph B above.” The plaintiff subsequently delivered to the designated agency of the Navy Department, in the specified kind of sacks, the amount of sugar called for in the “ attached ” sheet. It was received and used by the Navy. A copy of the order and of its acceptance is .set forth at length in Finding II. Considering all of its terms and the acceptance, it contains Avithin its four corners all the essential elements of a contract of sale. It states the amount of granulated sugar ordered, the time and place of its delivery, the kind of sacks in which it is tó be put, and a “ provisional price of 14 cents,” and the acceptance of-it appears. The fact that a final price was then left open for future determination does not defeat the contract, especially since *198 the sugar ordered bas been, actually • delivered by the one party and received by the other. If a price be not fixed or an agreed method of fixing it be not found in the contract, the law implies an agreement to pay the reasonable or fair market price of the goods at the time and place of delivery stated in the contract. (See Benjamin on Sales, vol. 1, pp. 102 et sey.; 35 Cyc. p. 101.) In United States v. Berdan Fire-Arms Co., 156 U. S. 552, there arose the question of the price to be paid for the use of a patented device, the Government officials not believing they had authority to agree upon the price. The Supreme Court says (p. 569) : “ That no price was agreed upon or that the officers of the Government were not authorized to agree upon a price is immaterial. No price y^as fixed in United States v. Palmer, 128 U. S. 262, or in United States v. Russell, 13 Wall. 623. The question is whether there was a contract for the use and not whether all the conditions of the use were provided for in such contract. This is the ordinary rule in respect to the purchase of property or labor.” In the instant case we are dealing with the purchase of property. As indicative of the understanding had by parties of the paper in question, it may be noticed that the instrument is referred to in the body of it as “ an order placed,” and one paragraph is eliminated because “not a part of this agreement.” If any significance is to be attached to the extracts from statutes appearing on the reverse side’of the order they show that the remedies suggested were suits in the Court of Claims or in the district courts when exercising concurrent jurisdiction with the Court of Claims. No reference is made to suits under section 10 of the Lever Act.
The argument of counsel for the Government predicates the want of jurisdiction upon the contention that the sugar was obtained by means of a “Navy requisition order No. N-6273,” and that “the requisition of food supplies” was only authorized by the tenth section of the Lever Act. We do not understand this contention to go to the length of claiming that the Lever Act was the only laAvful authority under which supplies for- the Navy could be secured. It must, of course, be recognized that ample authority to contract for food and other supplies is to be found in statutes *199 prior to the Lever Act, which was temporary legislation intended to grant additional powers because “of the existence of a state of war,” but the provisions of which should “ cease to be in effect when the existing state of war between the United States and Germany shall have terminated.” Section 24. The President was given the power to requisition. He delegated, as he was authorized to do, his powers under the act to other agencies. Whether the delegation of this authority continued during 1920, in view of the President’s proclamation relative to the Fuel Administration, the licensing of dealers in food supplies and to sugar, it is not necessary now to determine. (See Proclamations, 41 Stat. 1741, 1774, 1807 ; 40 Stat. 1919, 1929. Act of December 31, 1919, 41 Stat. 386.) But this power to requisition did not take away the right to get supplies through the means afforded by other statutes. It did not prevent contracts nor did it make resort to the harsher method of requisition essential. In Bogerfs case, 2 C. Cls. 159, it was necessary to ■determine whether the property (in that case a vessel) had been “ appropriated ” by the Government through the exercise of eminent domain or had been taken under the provisions of a written contract, because in the one event the court was deprived of jurisdiction by the act of July 4,1864, 13 Stat. 381, while in the other event it co'uld hear and determine the case. The court held that it had jurisdiction. In its opinion delivered by Judge Nott, it is said (p. 164): “Whether grounded on sovereignty, necessity, or implied contract, this right of eminent domain is the last means for acquiring property to be exercised by a government or to be resorted to by a court,” and further (p. 165) : “When'the vourt can impute to the Government a fair compliance with the terms of its agreements or an unnecessary exercise of its power, it is not a question which -construction of its acts shall be adopted, * * , *. An implied contract, however, always yields to an express one, and the parties here having provided for the taking of the vessel and having agreed upon the price to be paid, if so purchased, need not go behind the terms of their agreement.” In RusselVs case, 13 Wall. 623, wherein the same act of July 4,1864, was urged to defeat the jurisdiction of the court that was urged in Bogerfs case, *200 supra, the Supreme Court refused to refer the taldng and using of the vessel to an “ appropriation ” by the Government but allowed a recovery as this court had done (5 C. Cls. 121) upon contract.
A weakness in the theory of a requisition of the sugar is the absence of evidence to support such a theory. Calling an order or a proposal a requisition order does not make it so or change its effect. The power of requisition given by the act involved in its exercise the taking of property for which the act as well as the Constitution provided just compensation should be made. An order for the goods might very well be one of the steps in a contemplated requisition of them, and a refusal to comply with the order could be another step tending to justify a resort to the extreme measure of taking, authorized by the statute. But where an order is given in expectation of its acceptance and it is accepted and the goods delivered, there is no requisition or any necessity for it. Nor does the fact that the form in which it was drafted stated that compliance with the order was “obligatory” constitute the order a requisition or deprive it of its contractual effect. If it was in fact obligatory no acceptance of it was necessary. It was said in American Smelting Co. case, 259 U. S. 75, 79, “As pointed out by the Court of Claims, the acceptance was sent because the claimant was advised by the Government that no payment could be made until the claimant had accepted in writing the Government’s proposal, whereas no acceptance was necessary if the order was a compulsory requisition.” Yet, an acceptance was invited in the instant case and was given. It is said in the American Smelting Co. case, 55 C. Cls. 466, 471, in an opinion by Judge Hay: “Where one party makes an offer to another by letter and the party to whom the letter is addressed prepares and mails his answer accepting the proposal, a contract is made between the parties and is binding upon them.” In Herrmanns case, 57 C. Cls. 96, where the plaintiff delivered goods in England upon an order stating the price and did not wait for them to be “commandeered,” it was held that a protest against the price when paid him was unavailing to defeat the contract. See also Gibbons case, 8 Wall. 269. We repeat, the rights *201 of the parties are fixed by their contract. There is some insistence on behalf of plaintiff that the sugar was delivered after a conference between Commander Karker, who was the provisions and clothing officer at the fleet supply base, and representatives of different sugar refineries, having in view an agreement as to the price to be paid for sugar. This conference was held in May, but the facts show that the agreement reached had reference to future orders and not to orders placed before that time. We think the price offered by the Government officer in settlement was the reasonable and fair market value of the sugar at the time the order was given, but the price at the time and place fixed for its delivery was somewhat higher. Delay of 12 days in delivering the sugar does not confer a right to more than would be recoverable if delivery had been made promptly, in accordance with the contract. There was but one contract between the parties. See Gibbons case, supra.
Judgment will be awarded on the basis of the ascertained value of the sugar at the date fixed for its delivery, less the amount already paid. And it is so ordered.
GRAHAM, Judge: Hat, Judge; Downey, Judge; and Booth, Judge, concur.