Campbell, QJvief Justice-,
delivered the opinion of the court:
It is conceded by the Govermnent that the plaintiff is entitled to. payment for its tobacco products at the prices stated in its invoices of the same after crediting payments, already made, although they are larger than the provisional prices stated in the Navy order. The one question for decision is whether plaintiff is entitled to interest upon this, balance, admittedly due. The plaintiff contends that it should “ recover interest as a part of the measure of just compensation guaranteed by the Fifth Amendment,” because-it claims that its tobacco products were taken or requisitioned in virtue of the act of March 4, 1917, 39 Stat. 1193,, and the act of June 15,1917, 40 Stat. 182.
It is to be observed at the outset that the statute, section. 177, Judicial Code, provides that no interest shall be allowed on ány claim up to the time of the rendition of judgment, thereon by the Court of Claims unless upon a contract ex-pressingly stipulating for the payment of interest. Amendments to this section authorize the allowance of interest in judgments for taxes erroneously or illegally assessed or *704 collected. Revenue act of 1921, 42 Stat. 316. A claim for interest was accordingly denied where property was taken by the United States without the institution of condemnation proceedings. See North American Transportation & Trading Co., case, 253 U. S. 330. The taking in such case implies a promise to pay and the right of action in this •court is based upon this implied contract, Great Falls Mfg. Co. case, 112 U. S. 645, but is not founded on the Fifth Amendment. North American Transp. Co. case, supra; Klebe case, 263 U. S. 188, 191. Nor is it to be overlooked that the liability of the United States for interest is not merely limited by section 177, but does not exist at all in the absence of statutory authority to allow interest, unless an exception is to be found in cases to be referred to later on.
It is settled upon grounds of public convenience that ■“ interest is not to be awarded against a sovereign government unless its consent to pay interest has been manifested by an act of its legislature or by a lawful contract of its executive officers.” See United States v. North Carolina, 136 U. S. 211, 216; Sherman case, 98 U. S. 565, 567; Angarica v. Bayard, 127 U. S. 251, 260. This common-law rule exempting the United States from liability for interest has been adopted by Congress in section 177, Judicial Code. See North American Transportation & Trading Co. case, supra (p. 336). In consenting that the Government may be sued in the Court of Claims the Congress can place such conditions as it sees fit upon the exercise of the privilege or upon the authority of the court. A party availing himself of it accepts all the terms and limitations of the statute that authorizes the suit. McElrath case, 102 U. S. 426, 440. If even purely formal conditions be attached to the Government’s consent to be sued those conditions must be complied with. Rock Island, Arkansas & Louisiana Railroad Co. case, 254 U. S. 141, 143; 54 C. Cls. 22. This section 177 is taken from the act of March 3, 1863, 12 Stat. 765, which is the first act conferring power on the Court of Claims to render final judgments from which appeals would lie. Prior to that time the original act establishing the court (act of *705 February 24, 1855, 10 Stat. 612)- bad conferred power to bear and determine claims and report its action to Congress.
Provision is made in tbe act of March 3, 1863, for interest upon judgments appealed from by the Government and affirmed by the Supreme Court of the United States, and then follows a proviso in section 7 of the act to the effect that no interest shall be allowed on any claim up to the time of the rendition of judgment “unless the contract expressly stipulates for the payment of interest.” It thus appears that the same act which authorized judgments and appeals excludes in terms any right to include interest in the judgment, and therefore that not only does the general rule of law prevent the allowance of interest against the United States, but the statute conferring power to render judgments forbids such allowance where interest is not expressly stipulated for in the contract. But there, are provisions in a number of statutes enacted during the period of the World War conferring jurisdiction upon this court to ascertain the value of property taken by the Government where the owner is dissatisfied with the action of the President or other authorized agency designated to determine the just compensation which the statutes in such cases declare shall be made to the owner.
In actions brought here in virtue of these acts the rule of law and section 177 adverted to are not applicable. They come here and the court proceeds in them because of the particular statute under which the property is authorized to be taken and by which provision is made for the determination of just compensation. 'In that class of cases “ the owner’s right does not depend on contract, express or implied.” Seaboard Air Line Ry. case, 261 U. S. 299, 304. The suit in this court is a part of the authorized procedure initiated by the United States for the condemnation of the property. See Seaboard Air Line Ry. case, supra. In the case just cited it appeared that the property was taken under section 10 of the Lever Act, and it was therefore not within the jurisdiction of the Court of Claims. But in the later case of Brooks-Scanlon Corporation, 265 U. S. 106, appealed *706 from this court the claim was predicated upon a requisition or taking, exercised under the act of June 15, 1917, 40 Stat. 182, which directs that just compensation shall be made, to be determined by the President or by some agency to whom he may delegate the power. If the amount so determined by the President is unsatisfactory to the person entitled to receive the same the act provides that such person is to be paid 75 per cent of the amount so determined and “ shall be entitled to sue the United States to recover such further sum as added to said 75 per cent will make up such amount as will be just compensation therefor in the manner provided for by section 24, paragraph 20, and section 145 of the Judicial Code.” Adopting the rule laid down in the Seaboard Air Line Ry. case upon the question of interest the court in this Brooks-Scanlon Corp, case, say: “And, if the taking precedes the payment of compensation, the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value paid contemporaneously. Interest at a proper rate is a good measure of the amount to be added.”
When in conformity to the statute suit is brought in the Court of Claims by a party dissatisfied with the' President’s determination the court is to ascertain the “ just compensation ” which the party entitled should receive. There is nothing in the act which forbids the President taking account of the delay in payment and finding that the owner should be allowed such additional sum as will produce the full equivalent of such value paid contemporaneously, and the suit authorized in this court being a part of the plan for awarding this just compensation is in effect a continuation of the proceeding initiated by the United States for the condemnation of the property. See Seaboard Air Line Ry. case, supra. To read into the act authorizing this procedure the provision of section 177 might be to impair the very purpose of the act — the securing of just compensation to the person whose property has been taken. While the court is not authorized to include interest on its judgments in the cases coming under its general jurisdiction, it is authorized to include interest in cases brought here properly as part *707 of the procedure for condemnation initiated by the Government. Brooks-Scanlon Corp. case, supra.
In the instant case, there was no taking or requisition by the Government of plaintiff’s property. The- so-called requisition order was nothing more than an offer by the Navy Department to buy tobacco products to be manufactured and delivered at subsequent dates, which order was accepted by the plaintiff. Certain unit prices were stated in the order as being those that would be paid until by a later determination a reasonable and just price would be determined upon, the plaintiff in any event being “ assured of a reasonable profit under this order.” The products were furnished and the plaintiff was systematically paid these unit prices. It invoiced the goods at a different price, which produces the difference here sued for and to which admittedly it is entitled as being the fair and reasonable value of the tobaccos delivered. Plaintiff, however, now claims interest in addition to this principal sum. In identically the same kind of cases no interest has been allowed. See Reynolds Tobacco Co. case, 60 C. Cls. 328. American Tobacco Co. case, 58 C. Cls. 717. Plaintiff’s right to sue in this case must be based upon section 145, Judicial Code, and the court can not ignore the statute already adverted to, which forbids the allowance of interest.
The facts furnish no support for the contention that the tobacco products were requisitioned or that the order in question was obligatory. If it had been obligatory there was no necessity for its acceptance. American Smelting Co. case, 259 U. S. 75, 79; 55 C. Cls. 466, 471. But it was accepted, and thereby the plaintiff expressly contracted to furnish the products ordered at a price which would later be determined — not alone by the paymaster of the Navy, but by agreement if the parties should agree. Upon their failure to agree the right to sue upon the contract is given by section 145. See Federal Sugar Ref. Co. case, 60 C. Cls. 184, 197; Herrman case, 57 C. Cls. 96; Consolidation Coal Co. case, 60 C. Cls. 608, 621; Bogert’s case, 2 C. Cls. 159. The order states that pursuant to the provisions of the naval appropriation act of March 4, 1917, and the urgent de *708 ficiency act of June 15, 1917, and “ acting under the direction of the President ” it is placed with plaintiff “ under the conditions stated in subparagraph (b)” and that compliance with the order is obligatory. It speaks of “material ” needed by the Navy, but manifestly the order can not extend the authority conferred by the acts mentioned. It does not appear in this case that the President assigned his powers under the act of June 15, but we know from other cases that he did authorize the Secretary of the Navy to act. Assuming, for the purposes of this case, such authority in the Secretary, it by no means follows that the great powers conferred by these'acts were extended to the paymaster of the Navy and by him to orders issued by the quartermaster, Marine Corps, as the original order or one of its modifications directs.
It is to be observed that the act of March 4, 1917, 39 Stat. 1192, defines the “ war material ” concerning which an order could be placed and likewise provides the course that may be pursued in case of refusal or failure to comply with the authorized order. This at least implies that the order could be refused, in which case the President could take possession of the “ factory ” or any part of it and use the same for the production of the ships or war material. Sub-paragraph “ fourth ” authorizing the requisition or taking-over for use by the Government of any factory or part of it is limited to the period ending March 1, 1918. This act-does not contain the provision that does appear in the act of June 15, 1917, whereby the President may exercise the power and authority thereby vested in him through such agency or agencies as he should determine from time to time. 40 Stat. 183. There is a provision in the act of March 4 that where “ war material ” is requisitioned or taken over, the President shall determine just compensation for it, and if the party entitled be dissatisfied with the amount so determined he shall be paid 50 per cent of the amount so determined by the President and can sue for an additional sum in the Court of Claims. But the order in question does not proceed upon the theory of the payment of 50 per cent when determined, nor of 75 per cent as mentioned in the act of June 15. It proceeds upon the theory of the *709 payment of a stated .provisional price which might have been accepted and been acceptable to both parties. As a matter of fact the plaintiff was paid as and when deliveries were made largely more than 75 per cent of the invoice prices upon which its bills were based.
If there were reasonably some question as to whether the order should be treated as a requisition or the taking of property of the citizen on the one hand, or a contract for its purchase on the other hand, it would seem that it should-be treated as a contract because the Government is not to be presumed to exercise the harsher method of eminent domain when the same results can be gained by the ordinary methods of contract. Bogert’s case, 2 C. Cls. 160, 164. It would be going much farther than the court feels justified in going to hold that an order for tobacco products to be made and delivered in the future is a taking or a requisition of such products. It remains to be said, in view of the references to it in plaintiff’s brief, that the facts as stated in the findings in the American Tobacco Co. case, supra, were stipulated. No question arose as to interest and it was conceded that the court should determine the amount due for the tobaccos furnished. When, however, the court is asked to make findings or deductions as a basis for a liability that may not exist it requires-evidence of the essential facts and does not feel bound by stipulated deductions in the absence of proof.
The court will give judgment for the fair and reasonable value of the tobacco products, but will not allow interest. And it is so ordered.
GRaham, Judge; Hat, Judge; Downey, Judge; and Booth, Judge, concur.