Campbell, Chief Justice,
delivered the opinion of the court:
A judgment was rendered in each of these cases for the value of the property at the time it was taken by the Government. The plaintiff’s motions for a new trial are based upon the ground that the “ court erred in not allowing interest on the judgment.” At their request plaintiff’s attorneys have been heard in argument upon the question whether interest was allowable on the ascertained value of the property from the time of its taking. The property was a part of that coming within the general designation of the Bush Terminals in New York, and it is alleged to have been taken by the direction of the President pursuant to the authority vested in him by the act of August 29, 1916, 39 Stat. 619-645, and by section 10 of the act of August 10, *290 1917, 40 Stat. 279, the Lever Act. The order issued for its taking mentioned these two acts. Manifestly, we have nothing to do with a taking under section 10 of the Lever Act because the jurisdiction under that section is in the district courts, and not in the Court of Claims. See Pfitsch case, 256 U. S. 547. The distinction was noted by Mr. Justice Butler in the Sedboard Air Line case, 261 U. S. 299, 305, when speaking of the North American Transportation & Trading Co. case, 253 U. S. 330. He says that the latter “ was a suit in the Court of Claims based on an implied promise of the United States to pay for the property appropriated by it. It was not a condemnation case.” The Pfitsch case was brought in a district court- under the Lever Act.
In the instant case, the notice having referred to two acts, no reason is apparent why the plaintiff may not elect whether he will sue in the Court of Claims for a taking authorized by the first-named act or in the district court under the Lever Act. The amount claimed would exclude any right to proceed in the district court under its concurrent jurisdiction with the Court of Claims. The plaintiffs’ petitions state “ the United States is sued herein upon an implied contract under the general jurisdiction of this court,” conferred by section 145, Judicial Code, showing plainly that their suits are for a taking under the authority of the general defense act. They are similar, therefore, to the case considered in the North American Transportation Co., supra, where the question of the allowance of interest is fully considered and is not governed by the Seaboard Air Line case, supra, which was in the nature of a condemnation proceeding under the Lever Act. In the Duckett case, 266 U. S. 149, 150, the petition had an averment such as is above quoted, and in the opinion by Mr. Justice Holmes it is said the suit was on an implied contract. Duckett was suing for the taking of a part of the Bush Terminals just as the plaintiffs are here suing, and all three suits allege an implied contract. In the Duckett case it is said (p. 152) “ Whatever the effect of the taking, there was a contract, implied in fact, by the President’s order and there is no doubt concerning the jurisdiction of the Court of Claims,” citing the North *291 American Transportation case, supra. There can be no doubt that interest is not allowable on any claim founded on contract, express or implied, except as the statute, section 177, Judicial Code, allows it. The language of the statute is as follows:
“No interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest.”
The terms of this statute formed a part of the act giving the Court of Claims authority to render judgments against the United States. Act of March 3, 1863, 12 Stat. 765, 766. It provided for interest on judgments at a stated rate and forbade the allowance of interest on claims prior to judgment. After the full review of the question in the North American Transportation Go. case, in the opinion by Mr. Justice Brandéis and the ruling there adopted we might content ourselves with a mere reference to that case but for the attempt to distinguish that case from this and a suggestion that there is an inconsistency between that case and that of the Seaboard Air Line. As already stated, Mr. Justice Butler, in the opinion in the Seaboard Air Line case, shows that the latter was not in the Court of Claims. It was therefore unaffected by section 177. It is not probable that Mr. Justice Brandéis, who wrote the opinion in the earlier case, and other justices who concurred in its conclusions would all have concurred in the Seaboard Air Line case if it overruled the one just mentioned. Nor is it possible that Mr. Justice Butler discovered an inconsistency between his reasoning in the Seaboard Air Line case and that of the cáse which he so carefully distinguished. The late amendment of section 177 whereby interest is allowed upon taxes erroneously or illegally collected emphasizes the fact that Congress has been very slow to permit interest on claims against the Government. The language of the statute is plain and courts of law have no dispensing powers. Of significance in this connection is the case of The Gherohee Nation, decided by the Supreme Court of the United States April 12, 1926, 270 U. S. 476. It involved a question of interest and Mr. Chief Justice *292 Taft, who delivered the court’s opinion, announces the general congressional policy to be as shown in section 177, and says:
“When we consider the rule requiring an express provision of contract or statute to justify the imposition of interest in adjudicating any claim against the United States, we can find nothing in the circumstances of this case to increase the interest as adjudged. The additional interest now claimed is sought really as damages for the delay of Congress in appropriating the sum due in 1895 as the United States promised in the 1891 agreement. But the rule as to interest against the United States does not allow us to adjudge interest as damages at all. Congress must expressly provide for it or the contract must so provide. The only contractual obligation here is for simple five per cent interest until payment.”
It is argued that even if the recovery in this court be upon an implied contract, that contract is to make the “ just compensation ” provided for in the fifth amendment and the Seaboard and other cases, but the Seaboard case in particular is resorted to as justifying the contention that where there is delay in paying for the property the owner does not receive the just compensation required by the Constitution unless the delay is compensated for by the addition of interest. However, this contention overlooks the fact, admitted in argument, that the implied contract upon which recovery is had arises immediately upon the taking of the property and is therefore a contract to make the just compensation which is measured by the then value of the property, and in a suit upon that contract the court is confronted by the prohibitive provision of the statute.
If the suggestion that interest be computed but be not allowed as such does not sufficiently answer itself, the expression of the Chief Justice that we are not allowed to adjudge interest as damages at all would seem to set the question at rest. But the plaintiffs in their argument urge that the suits are not founded upon contract, but upon the Constitution of the United States — the fifth amendment requiring just compensation to be made for private property taken for public use. This argument overlooks the averment of the petitions to which we have adverted. But *293 the question is a recurring one in this court and should be met. It is urged that the Tucker Act of 1887 gaye an added jurisdiction to the Court of Claims which it did not have when the case of Great Falls Mfg. Co., 112 U. S. 645, was decided, holding that the law will imply a promise to make the required compensation. Therefore the contention is that the suit is not, since the Tucker Act, founded on contract but upon the Constitution.
It may be noted in passing that the reasoning of the court in Great Falls ease, supra, is not confined to cases where there may be found “ a meeting of the minds,” as in contracts generally, but the court say (p. 656), that in the absence of condemnation proceedings “ there is no sound reason why the claimant might not waive that right, and, electing to regard the action of the Government as a taking-under its sovereign light of eminent domain, demand just compensation.” But upon what theory can it be maintained that the suit for just compensation is founded upon the Constitution as that phrase appears in the Tucker Act? It still requires legal authorization to take in order to render the Government liable. The taking is still an exercise of the right of eminent domain, which does not rest upon and is not conferred by the Constitution. The fifth amendment does not confer the right of eminent domain but is only a condition of its exercise. Jones’ ease, 109 U. S. 513, 518. The argument that the claim of just compensation is based upon the Constitution is not an entirely new suggestion. It was made in the concurring opinion of Mr. Justice Brown in the Lynah Case, 188 U. S. 445, but does not appear to have been followed at any time. In the court’s opinion by Mr. Justice Brandéis in the North American Transportation & Trading Go. ease it is said (p. 335): “The right to bring this suit against the United States in the Court of Claims is not founded upon the fifth amendment.” This language is used in the court’s opinion by Mr. Justice Sutherland in the Klebe case, 263 U. S. 188, 191. In the Peabody case, 231 U. S. 530, where a taking of land was claimed, Mr. Justice Hughes, delivering the opinion of the court, said (p. 539) : “The suit must rest upon contract.” See also 250 U. S. 1.
*294 When the claim was again asserted in a subsequent suit, Portsmouth Co. v. United States, 260 U. S. 327, Mr. Justice Holmes, speaking for the court, said (p. 330): “ If the acts amounted to a taking, without assertion of an adverse right, a contract would be implied, whether it was thought of or not.” In the Schillinger case, 155 U. S. 163, Mr. Justice Brewer refers to the statutes conferring jurisdiction on the Court of Claims, including the Tucker Act, and says (p. 167) :
“ Under neither of these statutes had or has the Court of Claims any jurisdiction of claims against the Government for mere torts; some element of contractual liability must lie at the foundation of every action.” The question of the suit being founded on the Constitution was urged in the dissenting opinion by Mr. Justice Harlan, but the court held the case to be one “ sounding in tort,” and said:
“It is said that the Constitution forbids the taking of . private property for public uses without just compensation; that therefore every appropriation of private property by any official to the uses of the Government, no matter however wrongfully made, creates a claim founded upon the Constitution of the United States and within the letter of the grant in the act of 1887 of the jurisdiction to the Court of Claims. If that argument be good, it is equally good applied to every other provision of the Constitution as well as to every law of Congress. This prohibition of the taking of private property for public use without compensation is no more sacred than that other constitutional provision that no person shall be deprived of life, liberty, or property without due process of law. Can it be that Congress intended that every wrongful arrest and detention of an individual, or seizure of his property by an officer of the Government, should expose it to an action for damages in the Court of Claims? If any such breadth of jurisdiction was contemplated, language which had already been given a restrictive meaning would have been carefufiy avoided.”
Earlier than that one was the frequently cited case of Great Falls Manufacturing Co., 112 U. S. 645, placing the jurisdiction of the Court of Claims in cases of taking upon implied contract. This was prior to the Tucker Act, but unless its reasoning is correct it follows that the Court of Claims never had any jurisdiction of cases seeking the just compensation guaranteed by the fifth amendment until after *295 the. Tucker Act. It would seem that Congress thought differently because they restricted the jurisdiction by the act of July 4, 1864, 13-Stat. 381, in claims growing out of the appropriation of property by the Army or Navy during the Civil War “from the commencement to the close thereof.” See Russell case, 13 Wall. 623.
Speaking of the obligation of the Government to compensate the owner, the court say in the Russell case that beyond doubt such an obligation raises an implied promise on the part of the United States to reimburse the owner for the use of his property. One of the earliest cases in the Court of Claims involving the liability of the Government for the taking or destruction of private property was that-of William S. Grant, 1 C. Cls. 41, decided in March, 1864. The court took jurisdiction and gave judgment for what it found to be just compensation, holding that there was no distinction to be drawn between taking property to be used or taking it to be destroyed by or for the Government. In Johnson’s case, 2 C. Cls. 391, 415, it is said that the Government can not be sued in actions sounding in tort, but that because of the constitutional provision “ it has always been held that a party might recover upon the implied contract as though the property had been acquired under an agreement of purchase, leaving the price undetermined.” See 4 C. Cls. 248; Wiggins case, 3 C. Cls. 412, 422. It is not necessary to multiply cases.
It has been from the beginning of the Court of Claims until now consistently held that the liability of the Government to make compensation for private property taken in eminent domain is based upon "the implied contract arising out of its obligation imposed by the fifth amendment to make just compensation. At this late day why should this well-established rule be changed? Saying that the claim, is founded upon the Constitution can not possibly give a, party more rights than he has when asserting his claim as one founded upon contract, so far as the question of interest is concerned. It was suggested in Mr. Justice Brown’s opinion in the Dooley case, 182 U. S. 222, that the words “ not sounding in tort ” in the Tucker Act are in terms *296 referable only to the fourth class of cases as he defines them, the implication being that if the claim be founded on the Constitution or a law of Congress jurisdiction might be had of it even if sounding in tort. It was held that the claim for duties illegally exacted was based upon a law of Congress. In the Lynah case, supra, the concurring opinion of. Mr. Justice Brown refers to the classification of cases of which the Court of Claims has jurisdiction and adds that in his view claims founded upon the Constitution may be prosecuted in the court “ whether sounding in contract or in tort.” The proposition thus asserted was relied upon and urged by the claimant in Basso’s case, 239 U. S. 602, but the Schillinger case was followed. The question would seem to be put at rest by the Holland-America Lijn case, 254 U. S. 148, where the Dooley case is again reviewed.
The statutory declaration that excludes jurisdiction of actions sóúnding in tort is no more distinct than the provision of the same statute prohibiting the allowance of interest. As already stated, the latter is the older of the two provisions because it was contained in the original act before the Tucker Act was passed; it was not changed by that enactment and it was reenacted in 1911 as part of the Judicial Code, 36 Stat. 1136. When Congress excepted claims for taxes from its operation they did not see fit to except claims for taking under the power of eminent domain. No interest was included in the judgments in the Lynah and Williams cases that originated in the district court sitting as a court of claims, nor in the Heyward case involving property adjoining that of Lynah, but which was tried in the Court of Claims, 52 C. Cls. 87; 250 U. S. 633. In the Welch case, 217 U. S. 333, and the Cress and Kelly cases, 243 U. S. 316, no interest was allowed, while in the North American Transportation & Trading Co. case, appealed from the Court of Claims, it was expressly disallowed in view of the statute.
In no case finally determined and brought to our attention has interest been allowed against the United States where the suit originated in the Court of Claims or in a district court exercising concurrent jurisdiction with it, unless it be a case brought under some one of the statutes *297 enacted during tbe World War and treated as a proceeding in condemnation. In another case in this court, Liggett & Meyers Tobacco Co., decided February 15, 1926, 61 C. Cls. 693, an attempt is made to show how this court may proceed under special statutes in accordance with the suggestion of the Brooks-Scanlon case, 265 U. S. 106. It is proper to add that all of the judges are not agreed that interest as such is allowable in any case. Certain it is that Congress may prescribe the conditions upon which the Government may be sued and parties suing it accept the conditions imposed in the act. McElrath case, 102 U. S. 426, 440. The rights not granted, Congress has reserved to itself. In the instant cases we rest our decision on the statute, mindful that it is no part of the function of the court to say what the law should be, but only to apply it as we find it.
Each of the motions for a new trial must be overruled.
Gkaham, Judge; Hat, Judge; and Booth, Judge, concur.