## FOREIGN TRADE MANAGEMENT CO., Inc., v. UNITED STATES.

### No. 45989.

Court of Claims.
Dec. 1, 1947.

Dean Hill Stanley, of Washington, D. C., for plaintiff.

Mary K. Fagan, of Washington, D. C., and Herbert A. Bergson, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

The case at bar involves 840 long tons of copra which were purchased by plaintiff for resale in South America at about the same time the 1,460 long tons involved in case No. 45915, this day decided 74 F.Supp. 550, were purchased. The difference between the two cases is in this: In case No. 45915 the copra was requisitioned by the defendant; in the case at bar the 840 long tons were sold to the defendant by the American Union Transport, Inc., which held a lien on it to secure advances to plaintiff. Plaintiff says that this sale to the defendant was under circumstances which amount to a requisition of this copra by the defendant.

Plaintiff alleges the following facts in support of this assertion: The first shipment of this 840 long tons of copra arrived in this country on June 10, 1942. This was one day after plaintiff's export license for the exportation of the copra involved in case No. 45915 had been revoked. The 840 tons had been purchased for sale in Latin America, as had also the 1,460 tons. Pending action on plaintiff's renewal of its applications for export licenses on the 1400 odd tons, plaintiff unloaded the 840 tons onto lighters, until it could be determined whether or not export licenses would be granted.

About a month later, on July 17, 1942, defendant requisitioned the 1400 odd tons. Plaintiff made diligent inquiry to determine whether or not the 840 tons were to be requisitioned also, but it could get no commitment from the defendant thereon until about August 31, 1942, when it was advised that the 840 tons would not be requisitioned, but could be sold in the open market. It had been on lighters in the meantime. This decision was long delayed by defendant notwithstanding the fact that plaintiff and the American Union Transport, Inc., which held a lien on the goods, had continued to remind defendant that demurrage and other charges were accumulating at the rate of $115 a day.

Upon receipt of information from the defendant that the copra was not to be requisitioned, but could be disposed of on the open market, plaintiff's agents contacted Procter & Gamble Company and Colgate-Palmolive-Peet Company in an effort to sell the copra. They received from one company an offer of $123.20 a long ton for the copra, and from the other $137 a long ton. Both offers, however, were conditioned upon the right of the purchasers to retain the oil extracted from the copra. Under General Importation Order M–63, crushers of copra were required to turn the oil over to the Government, but there was some

doubt as to whether or not this order applied to the 840 long tons. When the Government ruled that General Importation Order M-63 did apply to it, both of these companies withdrew their offers and refused to pay more than $106.25 a long ton for it.

Plaintiff then made further demand on the defendant to requisition the copra, but this was not forthcoming.

Then Mr. Holzer, the President of the American Union Transport, Inc., which held a lien on the copra, faced with the prospect of demurrage and other charges eating up the value of it, went to the Requisitioning Division of the Board of Economic Warfare to see what could be done about the situation. He was advised that it would be best for him to sell the copra to the Commodity Credit Corporation if he wished to avoid further difficulty and delay. He was advised that the Board of Economic Warfare had been in communication with the Commodity Credit Corporation and that this corporation would pay $106.25 a long ton for the copra.

Under these circumstances, Mr. Holzer agreed to sell at this price.

The Board of Economic Warfare then arranged with the Commodity Credit Corporation to pay this price and it handled the entire transaction culminating in the sale.

There can be no doubt that the sale of this copra to the Commodity Credit Corporation was made under pressure. The American Union Transport, Inc., was induced to sell it on account of the restrictions placed on its disposition by the defendant. The plaintiff had been prohibited from exporting another quantity of it, and it was prohibited from selling it in the domestic market except to a purchaser who would agree to resell the oil to the Government. This had the effect of limiting the selling price to $106.25. Faced with this situation and with demurrage and other charges accumulating at the rate of $115 a day, plaintiff was compelled to acquiesce in the sale of its copra to the Commodity Credit Corporation for $106.25.

However, notwithstanding all this, this did not amount to a requisition by the defendant. The denial of an export license and the requirement that the oil extracted from the copra should be resold to the Government were valid wartime restrictions on plaintiff's use and disposition of its property, and plaintiff is not entitled to damages for any loss resulting therefrom. It was these restrictions that induced plaintiff to sell its product. No other compulsion was exercised. Since they were valid restrictions, the complusion under which plaintiff suffered was not unlawful and, hence, affords no ground for setting aside the contract of sale made on plaintiff's behalf.

Lawful regulations can be unlawfully employed, it is true; but we are not presented with such a case. Defendant merely chose to sit back and let economic forces do their work, whether inadvertently or from design, we do not know. Business men do that every day of the year. This does not constitute duress.

It is, therefore, the contract of sale which determines the rights of the parties. Under that contract there has been paid the full amount stipulated. Cf. American Smelting & Refining Co. v. United States, 55 Ct.Cl. 466; Id., 259 U.S. 75, 42 S.Ct. 420, 66 L.Ed. 833; Federal Sugar Refining Co. v. United States, 60 Ct.Cl. 184.

Plaintiff is not entitled to recover. Its petition will be dismissed. It is so ordered.

JONES, Chief Justice, and HOWELL, MADDEN and LITTLETON, Judges, concur.